IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | | |
|---|---|---|
| DALLAS J. STEWART, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:10-0032 |
| | ) | Judge Trauger |
| LES HELTON, | ) | Magistrate Judge Knowles |
| SABRINA PATTERSON, and | ) | |
| GARY BARRON, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM

Pending before the court is the Magistrate Judge's May 14, 2012 Report and Recommendation ("R&R") (Docket No. 130), which recommended that the defendants' Motion for Summary Judgment (Docket No. 113) be granted and that this action be dismissed with prejudice. The plaintiff, Dallas J. Stewart, proceeding *pro se*, has filed objections to the R&R (Docket No. 141), to which the defendants have responded (Docket No. 143).

## BACKGROUND

This suit arises out of an altercation between the plaintiff, Dallas J. Stewart, and another inmate, William McKnight, that resulted in the plaintiff suffering a broken nose. The plaintiff is currently an inmate of the Tennessee Department of Corrections and was previously a pretrial detainee in the Marshall County Jail ("the jail"). He has brought suit against the following defendants, alleging violations of his civil rights under 42 U.S.C. § 1983: (1) Les Helton, the

1

former Sheriff of Marshall County; (2) Sabrina Patterson, the current administrator of the jail; and (3) Gary Barron, a former correctional officer at the jail.

As the Magistrate Judge observed in the R&R, the plaintiff never responded to the statement of undisputed facts submitted by the defendants in support of their summary judgment motion. (Docket No. 130, at 20.) While Local Rule 56.01(g) provides that such a failure indicates "that the asserted facts are not disputed for the purposes of summary judgment," the court has nonetheless reviewed the affidavits submitted by the plaintiff in opposition to the motion as well as his deposition. Having conducted that review, the court finds established the following undisputed facts relevant to the disposition of the plaintiff's objections.

On August, 18, 2009, the plaintiff was booked into the jail on charges of rape of a child between the age of 3 and 13. At all relevant times, he resided in the E Pod of the jail, which is used to house those inmates charged with sexual offenses and other offenses that draw unwanted attention from other inmates or are sufficiently serious to justify their segregation from the general population. E Pod cells are also used to house prisoners who are segregated for disciplinary reasons.

While the plaintiff was incarcerated, inmate McKnight was housed in the E Pod from time to time, including those occasions where he was on lockdown, wherein he would primarily be confined to a cell within the pod. McKnight was first placed in the E Pod in either October or November of 2009. On the first occasion that the plaintiff came into contact with McKnight, he believed that he would receive trouble from him and ultimately pressed a call button inside the pod to ask for help from a Sergeant Kerbo. After informing Sergeant Kerbo that he was having

trouble with McKnight and that McKnight had threatened him, Kerbo immediately removed McKnight from the pod.

Following this incident, the plaintiff did not speak to any other jail officers about McKnight and never filed any complaints concerning him. In addition, Sergeant Kerbo never informed any of the individual defendants that the plaintiff had an issue with this particular inmate. Nonetheless, defendant Patterson was aware that McKnight had been involved in two prior incidents of fighting. After his earlier removal, McKnight was later housed in the E Pod on at least two or three other occasions without incident.

On March 2, 2010, the plaintiff completed an inmate request form directed to Patterson which stated:

> Sabrina, Joey Perryman[,] who is locked down in #3 in our pod[,] and Kerry Callahan, Billy Roland[,] and other people who I do not know in D pod are making serious threats to me [i]f they come in contact with me in the hallway or in transit to court. I wanted you to be aware of this.

Patterson responded to the plaintiff the next day, stating that "nobody is going to hurt you. We are taking all measures to make sure of this. If you have any more problems let me know." The plaintiff's mother, Deborah Stewart Harris, also met with defendant Helton on at least one occasion in 2010 and reported unspecified threats made to the plaintiff by unnamed inmates.

On March 21, 2010, McKnight, who had previously been in lockdown in a cell in the E Pod, was released early in the day and allowed to move about the pod. After McKnight was released, the plaintiff did not press the call button for help or otherwise complain to prison officers. Indeed, several hours later, both inmates were playing cards together. However, after receiving their dinner, an altercation broke out between the two when McKnight dipped his fork

into the plaintiff's mashed potatoes. The plaintiff suffered a broken nose as a result of this altercation.

Following the fight, McKnight was again placed on lockdown. Patterson asked the plaintiff if he wished to press charges and the plaintiff agreed to do so. McKnight later pled guilty to assaulting the plaintiff.

On April 13, 2010, the plaintiff commenced this action against the defendants. (Docket No. 1.) The plaintiff amended his Complaint on November 7, 2011. (Docket No. 81.) The Amended Complaint specifically alleges that the defendants violated his civil rights by: (1) exhibiting a deliberate indifference to his medical needs following the altercation with McKnight; and (2) failing to protect him by keeping him housed in the E Pod with McKnight and other inmates who placed the plaintiff at serious risk of harm.[1] (*Id.*) The plaintiff seeks compensatory and punitive damages for these alleged civil rights violations. (*Id.*) The defendants filed their Motion for Summary Judgment on March 14, 2012. (Docket No. 113.)

In the R&R, the Magistrate Judge concluded that the plaintiff had failed to show that the defendants exhibited a deliberate indifference to his medical needs following the altercation with McKnight. (Docket No. 130, at 24-25.) He also found that the undisputed facts demonstrated that the defendants had adequately protected the plaintiff. (*Id.* at 23-25.) The Magistrate Judge thus recommended that the defendants' Motion for Summary Judgment be granted and that the

---

[1] Although the plaintiff characterizes his claim as one for negligence, the court construes his factual allegations as constituting a failure to protect claim in violation of his constitutional rights. Indeed, the plaintiff's subsequent filings confirm that he is asserting a failure to protect claim. (*See* Docket No. 124, at 2-3; Docket No. 141, at 4.)

4

court dismiss this action. (*Id.* at 25.) On June 18, 2012, the plaintiff filed his specific objections to the R&R. (Docket No. 141.)

## **ANALYSIS**

When a magistrate judge issues a report and recommendation regarding a dispositive pretrial matter, the district court must review *de novo* any portion of the Report and Recommendation to which a party specifically objects. Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(C).

The plaintiff objects to the Magistrate Judge's failure to address the following facts in the course of recommending that the plaintiff's failure to protect claim should be dismissed: (1) that Patterson was previously aware that inmate McKnight had a behavioral history, including two prior incidents of fighting; and (2) that Patterson and Helton failed to take any action to protect the plaintiff either before or after he was assaulted by McKnight, despite the fact that they were aware of threats being directed to the plaintiff from multiple inmates. (Docket No. 141, at 4.) The plaintiff contends that both of these facts demonstrate that Patterson and Helton exhibited a deliberate indifference to his safety and should therefore be held liable for failing to protect him. (*Id.*)

As an initial matter, the court notes that, while the plaintiff alleges a failure to protect claim, he does not identify which of his constitutional rights were violated. Nonetheless, the court will presume for the purposes of this Memorandum Opinion, that he intended to bring claims under the Fourteenth Amendment for violations of his rights as a pretrial detainee. Most failure to protect claims generally arise under the Eighth Amendment rather than the Fourteenth

5

Amendment. *Thompson v. Hall*, No. 3:11-cv-1232, 2012 WL 124113, at *2 (M.D. Tenn. Jan. 17, 2012). While the plaintiff, as a pretrial detainee, was not protected by the Eighth Amendment, "the [E]ighth [A]mendment rights of prisoners are analogized to those of detainees under the [F]ourteenth [A]mendment to avoid the anomaly of extending greater constitutional protection to a [convicted prisoner] than to one awaiting trial." *Roberts v. City of Troy*, 773 F.2d 720, 723 (6th Cir. 1985).

It is well settled that prison officials have a duty under the Eighth Amendment to take reasonable measures to ensure the safety of inmates from other inmates. *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994). Nonetheless, prison officials will not be found liable for every injury suffered by one inmate at the hands of another. *Id.* at 834. Indeed, to find a prison official liable for a failure to protect under the Eighth Amendment, two requirements must be met. *Id.* First, the plaintiff must demonstrate that his mistreatment was objectively "sufficiently serious." *Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011) (citing *Farmer*, 511 U.S. at 834). Specifically, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 833. Second, the plaintiff must establish that the prison official acted with deliberate indifference to the inmate's safety. *Id.* To act with deliberate indifference, the official must know of and disregard "an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Although the Magistrate Judge did not cite the above test in analyzing the plaintiff's failure to protect claim, he appears to have analyzed the subjective prong of the two-part *Farmer*

6

test but not to have made any findings as to the objective component. The plaintiff's objections are not directed to the objective prong, but, because the objective prong is the first step of the two-part inquiry in analyzing failure to protect claims, the court must begin its analysis there.

As to this component, the plaintiff alleges in the Amended Complaint that he was at serious risk of harm because he was housed with inmates (including McKnight) in the E Pod who had violent charges and "no reason for . . . being . . . there." (Docket No. 81, at 4-5.) The plaintiff, however, has not offered a factual basis to demonstrate that he faced a substantial risk of serious harm from such inmates in the E Pod. While it is undisputed that the plaintiff had asked Sergeant Kerbo to remove McKnight from the E Pod in October or November of 2009 after McKnight threatened him, it is also undisputed that McKnight came back to the E Pod on at least two or three subsequent occasions without any incident prior to the March 21, 2010 altercation. On the day of the altercation, the plaintiff did not complain about McKnight's release from lockdown. Indeed, both inmates played cards together at some point prior to the altercation. In addition, although the plaintiff complained about threats made by other inmates, those threats did not concern the E Pod, but were instead directed at the plaintiff being in the hallways of the jail or otherwise in transit to court.

However, even if the court were to assume that the plaintiff met the objective prong of the *Farmer* test, his specific objections fail to create a genuine dispute of material fact as to whether Patterson and Helton exhibited a deliberate indifference to his safety. Again, the plaintiff's two specific objections to the R&R concern the Magistrate Judge's failure to consider certain evidence that demonstrates Patterson and Helton's deliberate indifference. The court will

7

therefore address the plaintiff's objections as they relate to each of these two defendants.

The plaintiff's first objection contends that the Magistrate Judge failed to address Patterson's awareness of McKnight's two prior incidents of fighting.[2] (Docket No. 141, at 4.) While the Magistrate Judge noted this undisputed fact in the course of summarizing the plaintiff's arguments in opposition to the defendants' summary judgment motion, he did not specifically address it in his analysis of the plaintiff's failure to protect claim. (*See* Docket No. 130, at 24-25.) Nonetheless, having now considered this evidence, the court finds that it does not create a genuine dispute of material fact as to whether Patterson exhibited a deliberate indifference to the plaintiff's safety. Indeed, although Patterson knew that McKnight had been involved in two prior fights, the plaintiff has presented no evidence concerning the details of those altercations. For instance, there is no evidence showing that McKnight was the aggressor in those incidents or otherwise caused any serious injuries to the others involved. The plaintiff has also failed to adduce any evidence showing that McKnight was generally known to be an aggressor who posed a risk to a large class of inmates at the jail. *C.f. Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004) (noting that deliberate indifference can be demonstrated where it is known to a prison official that "a specific individual poses a risk to a large class of inmates . . . even where the particular prisoner at risk is not known in advance"). Moreover, it is undisputed that, prior to the March 21, 2010 altercation, Patterson had no knowledge of any issues between McKnight and the

---

[2] While the plaintiff also contends that Patterson was aware of McKnight's behavioral history, he does not specify precisely what that history contained, aside from the two prior incidents of fighting. Patterson has otherwise admitted that she was aware that McKnight "had a long history of disciplinary actions for various types of non-violent behavior." (Docket No. 126, at 3.)

8

plaintiff. Based on this record, Patterson cannot be charged with having an awareness of facts from which it could be inferred that McKnight posed a substantial risk of serious harm to the plaintiff. *See Farmer*, 511 U.S. at 837.

The second objection asserts that the Magistrate Judge failed to consider that both Patterson and Helton took no action to protect the plaintiff, either before or after he was assaulted by McKnight, despite the fact that they were aware of threats against him made by various inmates. (Docket No. 141, at 4.) Having reviewed the R&R, the court finds that this objection is without merit.

As to defendant Patterson, the Magistrate Judge plainly considered her awareness of the threats from multiple inmates reported by the plaintiff on March 2, 2010. He specifically noted that the plaintiff's report to Patterson did not identify McKnight and that Patterson was otherwise responsive to the plaintiff's concerns. (Docket No. 130, at 25.) Indeed, the day after the plaintiff reported the threats, Patterson: (1) assured the plaintiff that nobody was going to hurt him; (2) informed him that jail officials were taking all measures to make sure that he was safe; and (3) invited him to let her know if he faced any additional problems. The court also notes that the threats reported by the plaintiff specifically concerned his coming into contact with certain named and unnamed inmates in the hallways of the jail or in transit to court. Thus, although Patterson was aware of facts from which she could infer that the plaintiff faced a substantial risk of serious harm in certain instances, that risk did not extend to the E Pod, the location where the plaintiff was confined and injured. Moreover, while Patterson was subjectively aware that the plaintiff faced a substantial risk of serious harm in the hallways or while in transit to court, the plaintiff

9

has failed to adduce evidence showing that she disregarded that specific risk.[3] If anything, the record evidence shows that Patterson immediately responded to the risk reported by the plaintiff and assured him that jail officers would protect his safety. Patterson therefore acted reasonably under the circumstances to protect the plaintiff. *Farmer*, 511 U.S. at 844 (noting that a "[a] prison official's duty under the Eighth Amendment is to ensure '"reasonable safety"'") (quoting *Helling v. McKinney*, 509 U.S. 25, 33 (1993).

Contrary to the plaintiff's contention otherwise, the Magistrate Judge also considered the threats reported to Helton by the plaintiff's mother. In doing so, the Magistrate Judge noted that, because the plaintiff's mother never identified McKnight as having threatened the plaintiff, Helton could not be held liable for any failure to protect the plaintiff from McKnight. (Docket No. 130, at 23.) Indeed, the affidavit of the plaintiff's mother only reveals that she reported certain unspecified threats made to the plaintiff by unnamed inmates. (Docket No. 126, at 1.) The court finds that Helton could not have inferred from this non-specific information that the plaintiff was in substantial risk of serious harm. The plaintiff has failed to produce any other evidence showing that Helton was aware of facts that would have made him subjectively aware

---

[3] In his affidavit supporting his opposition to the defendants' summary judgment motion, the plaintiff notes that, despite Patterson and Helton's awareness of the threats made by other inmates, they did not place him in 23/1 protective custody or segregate him from the other inmates. (Docket No. 125, at 2.) The plaintiff, however, does not explain how being placed in protective custody or some other form of segregation would have protected him from the specific threats at issue, which allegedly posed a risk of harm to him in the hallways of the jail or in transit to court. Moreover, it is undisputed that, at all relevant times, the plaintiff was housed in the E Pod, which was reserved for: (1) inmates charged with sexual offenses or other offenses that warrant their segregation from the general population; and (2) inmates who are segregated for disciplinary reasons.

that the plaintiff faced such a substantial risk. Thus, Helton cannot be charged with exhibiting deliberate indifference to the plaintiff's safety.[4]

In sum, although the plaintiff suffered an unfortunate injury as a result of the altercation with McKnight, he has failed to adduce evidence showing that his injury resulted from the deliberate indifference of defendants Patterson and Helton. In light of the foregoing, the Magistrate Judge's May 14, 2012, Report and Recommendation that the defendants' Motion for Summary Judgment be granted (Docket No. 130) will be **ACCEPTED**, and this action will be **DISMISSED**.[5]

---

[4] The plaintiff also contends that Patterson and Helton failed to take measures to protect him after his altercation with McKnight. (Docket No. 141, at 4.) It is undisputed that, following the altercation, McKnight was placed in lockdown. The plaintiff has failed to assert that he received new threats or was at serious risk of harm from McKnight or anyone else after the altercation. He also has not asserted that he reported any new threats to Patterson or Helton following this event. In addition, it is undisputed that Patterson asked the plaintiff after the altercation if he wished to press charges against McKnight. The plaintiff did so and McKnight pled guilty to assault. Thus, the plaintiff has failed to adduce any evidence supporting his contention that Patterson and Helton failed to protect the plaintiff following the altercation.

[5] The plaintiff also attempts to use his objection to the May 14, 2012 R&R as a vehicle to object to a separate Order issued by the Magistrate Judge on March 22, 2012, denying the plaintiff's second Motion for Appointment of Counsel (Docket No. 119). The plaintiff never filed a timely objection to that order, and his attempt to do so almost three months after its issuance is improper. *See* Fed. R. Civ. P. 72(a) (noting that "[a] party may serve and file objections to [a Magistrate judge's order concerning a nondispositive pretrial matter] within 14 days after being served with a copy"). In any event, the court notes that the plaintiff's second motion sought appointment of counsel to represent him during the *trial* portion of the case on account of his tourette's syndrome. (Docket No. 94, at 1.) However, given the court's decision accepting the May 14, 2012 R&R, there will no longer be a trial in this matter, and any objections to the March 22, 2012 Order denying the plaintiff's second motion are therefore moot.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge